UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Assurance Company of America, | ) | 4:11-cv-03425-RBH |
| | ) | |
| Plaintiff, | ) | **PLAINTIFF'S RESPONSE IN** |
| | ) | **OPPOSITION TO DEFENDANT'S** |
| vs. | ) | **MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |
| Penn-America Insurance Company, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Assurance Company of America ("Assurance") submits this memorandum in opposition to Penn-America Insurance Company's ("Penn-America") Motion for Summary Judgment [Dkt. 19]. For the reasons discussed below, the Court should deny Penn-America's motion, with leave to refile, or stay Penn-America's motion, in order that Assurance's Motion to Certify Questions to the South Carolina Supreme Court [Dkt. 30] may be decided. Alternatively, the Court should deny Penn-America's motion on the ground that *Sloan Construction Company v. Central National Insurance Company of Omaha*, 269 S.C. 183, 236 S.E.2d 818 (1977) is not controlling because although both carriers provide coverage to the same insured, the policies do not cover an "identical risk," and South Carolina would recognize an equitable cause of action between insurers for sharing of defense costs.

**FACTUAL BACKGROUND**

This declaratory judgment action involves two primary commercial general liability insurance policies which were issued by two different insurers to the same insured for different policy periods. Assurance issued a policy to James Eason, which policy bears number SCP38355112 and was in effect from August 25, 2001 to August 25, 2002 (the "Assurance Policy"). (Complaint for Declaratory Relief, ¶ 1). Penn-America also issued a policy to James

Eason, which policy bears number PAC6321822 and was in effect from August 6, 2003 to August 6, 2004 (the "Penn-America Policy"). (Complaint for Declaratory Relief, ¶ 2).  Both the Assurance Policy and the Penn-America Policy are occurrence policies which provide coverage for indemnity and defense of suits, subject to their terms, conditions, and exclusions, for damages because of "property damage" that occurs during the policy period and is caused by an "occurrence."

In 2007 and 2008, construction defect lawsuits arising out of allegedly defective construction of townhomes known as the Rivergate Project in Horry County, South Carolina were initiated against a number of defendants including James Eason, individually and doing business as James Eason & Company (the "Rivergate Litigation").[1]  With regard to Eason, the Plaintiffs in the Rivergate Litigation allege that Eason "installed all of the windows, doors, framing, sheathing, Tyvek, and roof felt on the Clubhouse and a portion of the windows, doors, framing, sheathing, Tyvek and roof felt as a subcontractor to RWG [Inc., one of the general contractors for the Rivergate project],] on Building 23 at the Rivergate project" (Plaintiffs' Second Amended Complaint in the Rivergate Litigation filed on December 16, 2011, ¶ 66). Plaintiffs in the Rivergate Litigation further allege that, as a result of defective design and construction on the part of Eason and other named Defendants, Plaintiffs have sustained continuous and repeated damages since the completion of construction (See Second Amended Complaint in the Rivergate Litigation, ¶¶ 99-101 and 108-109).  Based on these allegations, the

---

[1] The first construction defect lawsuit arising out of the Rivergate Project was filed in 2007, was captioned "Robert Sanger, Representing a Class of similarly situated people, Plaintiff v. WW & LB Development Company, LLC, et al. Defendants," and bore civil action number 07-CP-26-0228.  By Order dated March 31, 2009, this Sanger Action was consolidated with another construction defect lawsuit arising out of the Rivergate Project.  The consolidated action is captioned "Rivergate Homeowners' Association, Plaintiffs v. WW & LB Development Company, LLC, et al., Defendants" and bears civil action number 2008-CP-26-4690.

alleged property damage in the Rivergate Litigation is appropriately characterized as progressive property damage which occurred continuously over a number of years.

It is undisputed that Eason's defense of the Riverside Litigation was tendered to both Assurance and Penn-America (See Complaint for Declaratory Relief, ¶ 18 and Defendant Penn-America Insurance Company's Answer to Plaintiff's Complaint, ¶ 15).  Assurance agreed to and continues to defend Eason in the Riverside Litigation pursuant to a full reservation of rights and has paid more than $100,000 to date in defense fees and costs on behalf of Eason.  Penn-America has denied coverage and refused to defend Eason in the underlying construction defect litigation (See Complaint for Declaratory Relief, ¶¶ 6).

Penn-America is obligated to defend the carriers' mutual insured in the Riverside Litigation pursuant to the terms and conditions of its policy.  Assurance instituted this declaratory judgment action seeking reimbursement from Penn-America for costs incurred in defense of Eason in the Riverside Litigation.  Thus, the resolution of this case necessarily depends upon whether Assurance is entitled to pursue causes of action for equitable indemnity, equitable contribution, equitable subrogation or unjust enrichment against Penn-America to recover some or all of the costs Assurance has incurred in the defense of the insurers' mutual insured in the Riverside Litigation.

## **PROCEDURAL BACKGROUND**

Assurance brought this action to determine to what extent Penn-America is obligated to reimburse Assurance for the costs of defending Eason in the Rivergate Litigation.  In addition to declaratory relief, Assurance's complaint in this action seeks reimbursement through alternative causes of action for equitable contribution, equitable indemnity and unjust enrichment.  Finally,

Assurance seeks, as subrogee to Eason, to recover under a breach of contract theory based on Penn-America's failure to provide Eason a defense as obligated under the Penn-America Policy.

Penn-America denied the allegations of Assurance's complaint and, on August 16, 2012, filed a Motion for Summary Judgment [Dkt. 19]. Penn-America's sole basis for summary judgment is that "Assurance is not entitled to relief under any of the causes of action asserted in the Complaint, as there is no contractual relationship between the parties requiring contribution from Penn-America for the expenses of the defense of their mutual insured . . . ." (Motion for Summary Judgment, Dkt 19, p. 1). In its Memorandum in support of its motion, Penn-America cites solely to *Sloan* in support of its argument that Assurance cannot recover defense costs from Penn-America and argues that the factual scenario in *Sloan* is identical to the one presented to this Court. (Memorandum in Support of its Motion for Summary Judgment, Dkt 19-1, p. 4). As argued below, the issue of whether *Sloan* is controlling is uncertain and Assurance has moved for certification of questions to the South Carolina Supreme Court so that the parties and Court may be provided guidance as to *Sloan's* breadth. Alternatively, because the factual scenario in this case does not present an "identical risk," as contemplated by *Sloan*, *Sloan* is distinguishable and this Court should deny Penn-America's Motion for Summary Judgment.

## ARGUMENT

A.  Penn-America's Motion for Summary Judgment should be denied, with leave to refile, or stayed, pending resolution of Assurance's Motion to Certify Questions to the South Carolina Supreme Court.

In its Memorandum in Support of Its Motion for Summary Judgment [Dkt. 19-1], Penn-America advances a single basis for summary judgment: that Assurance has no right of recovery against Penn-America for its failure to defend Eason. Specifically, Penn-America argues that

4

Assurance is a non-party to its contract with Eason and, therefore, lacks standing to pursue Penn-America for its failure to defend.

In support of this position, Penn-America relies on *Sloan Construction Company v. Central National Insurance Company of Omaha*, 269 S.C. 183, 236 S.E.2d 818 (1977). In *Sloan*, Sloan Construction Company was sued as a result of an automobile accident involving a dump truck being operated by one of Sloan's agents. Sloan was insured under an auto liability issued by Liberty Mutual, under which defense of the lawsuit was triggered. Sloan's agent was insured under a similar auto liability policy issued by Central National. However, although Central National was put on notice of the claim and its policy was triggered as to the duty to defend, it refused to defend Sloan. Thus, Liberty Mutual undertook the defense of the action. By agreement with Sloan, the defense costs were actually paid by Sloan with the proceeds of a loan pursuant to a loan receipt agreement. The loan was repayable only in the event Sloan was successful in collecting the defense costs from Central National or another party.

Sloan brought an action against Central National for reimbursement of its defense costs. The trial court ordered Central National to reimburse Sloan, but the South Carolina Supreme Court reversed, holding:

> We hold that where two companies insure the identical risk and both policies provide for furnishing the insured with a defense, neither company, absent a contractual relationship, can require contribution from the other for the expenses of the defense where one denies liability and refuses to defend. The duty to defend is personal to both insurers; neither is entitled to divide the duty.

*Sloan* at 187, 236 S.E.2d at 820.

Assurance does not concede that *Sloan* is applicable based on the policies in this case being dissimilar, an argument addressed below. However, if the Court finds that *Sloan* is applicable, Assurance requests that this Court deny Penn-America's Motion for Summary

Judgment, or at least stay it, in order to allow the South Carolina Supreme Court to clarify or reconsider *Sloan*. Specifically, Assurance filed a Motion to Certify Questions to the South Carolina Supreme Court on October 1, 2012 [Dkt 30], which seeks to allow the South Carolina Supreme Court address whether the holdings of *Sloan* are still consistent with South Carolina public policy and case law. Based on the arguments set forth in Assurance's Memorandum in Support of its Motion to Certify Questions to the South Carolina Supreme Court [Dkt 30-1], this Court should grant the motion and deny Penn-America's Motion for Summary Judgment with leave to refile (or, alternatively, stay the motion) until Assurance's motion is decided.

B.   <u>Assurance is entitled to equitable relief for reimbursement of defense costs because the policies at issue, unlike *Sloan*, do not insure an "identical" risk, and Penn-America was obligated to undertake defense of Eason.</u>

As discussed above, *Sloan* held that "where two companies insure the identical risk and both policies provide for furnishing the insured with a defense," an insurer who provides a defense does so without the right of equitable reimbursement from the other. *Sloan* at 187, 236 S.E.2d at 820. Thus, the South Carolina Supreme Court conditioned its holding in *Sloan* upon the policies at issue insuring an "identical" risk.

The South Carolina Court of Appeals, relying on the fact that the policies were not "identical," distinguished *Sloan* in *Unisun Insurance Company v. Hertz Rental Corporation*, 312 S.C. 549, 436 S.E.2d 182 (Ct.App. 1993). In *Unisun*, an uninsured motorist insurer filed a declaratory judgment action against a primary auto liability insurer after the liability carrier refused to defend the at-fault motorist. The Court of Appeals distinguished *Sloan* on the ground that both carriers in *Sloan* were primary for the loss. *Unisun* at 555, fn 2, 436 S.E.2d at 186, fn 2.

6

In the present case, the Assurance Policy and the Penn-America Policy are not identical. They each insure Eason for commercial general liability claims, but each policy provides coverage only for "property damage" that occurs in its policy period. Therefore, the Assurance Policy can only cover "property damage" occurring between June 25, 2001 and June 25, 2002. The Penn-America Policy covers "property damage" occurring between August 6, 2003 and August 2, 2004. .

*Sloan* is distinguishable because the loss in that case was a motor vehicle accident in which the accident and injury occurred entirely within the policy period of each insurer. An insurer defending a claim such as the one in *Sloan*, where all damages fall within a single policy period, defends an identical risk as the non-defending insurer. In this case, a "long-tail" damage claim involving alleged damage that spans multiple policy periods, a single insurer is put in the position of defending claims for damages that fall outside of its coverage and within another's insurer's coverage. .

Assurance vigorously disputes Penn-America's factual contention that "the factual scenario in Sloan is identical to the one presented here." Because these risks are not identical, *Sloan* is inapplicable and Assurance is entitled to seek equitable reimbursement from Penn-America.

## **CONCLUSION**

For the reasons set forth above, Assurance respectfully requests that this court deny Penn-America's Motion for Summary Judgment or, alternatively, deny with leave to refile or stay Penn-America's Motion for Summary Judgment pending disposition of Assurance's Motion to Certify Questions to the South Carolina Supreme Court.

7

8

        s/Jennifer D. Eubanks
        Phillip E. Reeves (Fed ID. No. 3232)
        Email Address: preeves@gwblawfirm.com
        Jennifer D. Eubanks (Fed. Bar No. 6137)
        Email Address: jeubanks@gwblawfirm.com
        GALLIVAN, WHITE & BOYD, P.A.
        55 Beattie Place, Ste. 1200
        P.O. Box 10589
        Greenville, South Carolina 29603
        (864) 271-9580

        Attorneys for Plaintiff,
        Assurance Company of America

Greenville, SC

October 2, 2012