UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| ASSURANCE COMPANY OF AMERICA, | ) ) ) | **4:11-cv-03425-RBH** |
| Plaintiff, | ) ) ) | **ORDER** |
| vs. | ) ) | |
| PENN-AMERICA INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) | |

This matter comes before the Court on Defendant Penn-America Insurance Company's (hereinafter "Penn-America") Motion for Summary Judgment as to all causes of action asserted by Plaintiff, Assurance Company of America (hereinafter "Assurance"), in addition to Assurance's Motion to Certify Questions to the South Carolina Supreme Court. A hearing was held on Friday, February 8, 2013. Present for the Plaintiff was Jennifer D. Eubanks, Esq. and present for the Defendant was Jesse A. Kirchner, Esq. For the reasons set forth herein, the Court grants Penn-America's Motion for Summary Judgment (ECF No. 19) and denies Plaintiff's Motion to Certify Questions to the South Carolina Supreme Court (ECF No. 30).

I.     FACTUAL OVERVIEW

Assurance issued a policy of general liability insurance to James Eason, which policy bears number SCP38355112 and was in effect from August 25, 2001 to August 25, 2002 (the "Assurance Policy"). (Complaint for Declaratory Relief, ¶ 1). Penn-America also issued a policy of general liability insurance to James Eason, which policy bears number PAC6321822 and was in effect from August 6, 2003 to August 6, 2004 (the "Penn-America Policy"). (Complaint for Declaratory Relief,

¶ 2).  Both the Assurance Policy and the Penn-America Policy provide coverage for indemnity and defense of suits, subject to their terms, conditions, and exclusions, for damages because of "property damage" that occurs during the policy period and is caused by an "occurrence."

In 2007 and 2008, construction defect lawsuits arising out of the allegedly defective construction of townhomes known as the Rivergate Project in Horry County, South Carolina were initiated against a number of defendants including James Eason, individually and doing business as James Eason & Company (the "Rivergate Litigation").[1]  With regard to Eason, the Plaintiffs in the Rivergate Litigation allege that Eason "installed all of the windows, doors, framing, sheathing, Tyvek, and roof felt on the Clubhouse and a portion of the windows, doors, framing, sheathing, Tyvek and roof felt as a subcontractor to RWG [Inc., one of the general contractors for the Rivergate project], on Building 23 at the Rivergate project." (Plaintiffs' Second Amended Complaint in the Rivergate Litigation filed on December 16, 2011, ¶ 66).  Plaintiffs in the Rivergate Litigation further allege that, as a result of defective design and construction on the part of Eason and other named Defendants, Plaintiffs have sustained continuous and repeated damages since the completion of construction (See Second Amended Complaint in the Rivergate Litigation, ¶¶ 99-101 and 108-109).  Based on these allegations, the alleged property damage in the Rivergate Litigation is appropriately characterized as progressive property damage which occurred continuously over a number of years.

It is undisputed that Eason's defense of the Rivergate Litigation was tendered to both Assurance and Penn-America (See Complaint for Declaratory Relief, ¶ 18 and Defendant Penn-

---

[1] The first construction defect lawsuit arising out of the Rivergate Project was filed in 2007, was captioned "Robert Sanger, Representing a Class of similarly situated people, Plaintiff v. WW & LB Development Company, LLC, et al. Defendants," and bore civil action number 07-CP-26-0228.  By Order dated March 31, 2009, this Sanger Action was consolidated with another construction defect lawsuit arising out of the Rivergate Project.  The consolidated action is captioned "Rivergate Homeowners' Association, Plaintiffs v. WW & LB Development Company, LLC, et al., Defendants" and bears civil action number 2008-CP-26-4690.

America Insurance Company's Answer to Plaintiff's Complaint, ¶ 15).  Assurance agreed to and continues to defend Eason in the Rivergate Litigation pursuant to a full reservation of rights.  Penn-America initially denied coverage and refused to defend Eason in the underlying construction defect litigation (See Complaint for Declaratory Relief, ¶¶ 6).  At the hearing in this matter, counsel for Penn-America acknowledged that Penn-America recently agreed to undertake Eason's defense under reservation of rights.  Counsel for Assurance advised the court that Assurance is currently seeking to withdraw its defense.

II.     LEGAL STANDARD

When no genuine issue of any material fact exists, summary judgment is appropriate. *See Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.*  However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"[O]nce the moving party has met [its] burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *See id.* Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *Celotex Corp.,* 477 U.S. at 322.

III. ANALYSIS

### *Motion for Summary Judgment*

Assurance seeks equitable contribution for its own expenses in defending the Insured despite the fact that Assurance is not a party to the insurance contract with Penn-America and is without an assignment from the Insured. Thus, Assurance does not stand in a derivative relationship to Insured. Just as liability in an action for bad faith is strictly tied to the implied-in-law covenant of good faith and fair dealing arising out of an underlying contractual relationship, liability for contribution, indemnity, unjust enrichment and breach of contract each arise out of a contractual or special relationship that simply does not exist in this case. Stated differently, Assurance does not have standing to pursue these claims against Penn-America.

Furthermore, in South Carolina the duty to defend is personal to each insurer. *Sloan Construction Co. v. Central Nat'l Ins. Co. of Omaha*, 236 S.E.2d 818, 820 (1977). The obligation is several and the insurer is not entitled to divide the duty ***nor require contribution from another*** absent a specific contractual right. Id (emphasis added). In *Sloan*, the insured tendered its defense to Liberty Mutual and Central after it was sued. Liberty subsequently defended while Central refused to participate in the defense. Notably, Central *admitted* that it breached its obligations to its insured when it refused to timely provide a defense upon demand. Nonetheless, the Court ultimately held that where two companies insure the identical risk and both policies provide for furnishing the insured with a defense, neither company, absent a contractual relationship, can require contribution from the other for the expenses of the defense where one denies liability and refuses to defend.

The factual scenario in *Sloan* is similar to the one presented here. When Assurance undertook the defense of the Insured, it did no more than what it believed it was obligated to do under the terms of its contract and acted, not for Penn-America, but for the Insured. Assurance has not been damaged

4

because in funding the defense of the Insured, it is fulfilling a contractual obligation owed to the Insured.  Absent any damage, a right of recovery from Penn-America cannot exist.

Assurance argues that *Sloan* is distinguishable on two grounds.  First, it noted at oral argument that while *Sloan* held that one insurer could not require recovery from another insurer for defense costs absent a contractual relationship, the *Sloan* Court did not expressly address equitable remedies in its decision and did not rule out a court's discretionary power to award equitable relief in such a situation.  "Under general principles of contract law, no right to recovery exists in such a situation." *Sloan* at 189, 236 S.E.2d at 821.  This Court rejects this argument.  Assurance has cited no authority to support its argument for an equitable remedy or equitable right of recovery other than its interpretation of *Sloan*.

Second, Assurance argues that it and Penn-America did not insure an "identical risk" as it was presented in *Sloan*.  In *Sloan*, the insurers insured a mutual insured for a single overlapping policy period and for a single discrete occurrence – the automobile accident.  Here, Assurance argues that the insurers issued policies covering different policy periods and the alleged damages spanned multiple policy periods.  Penn-America, in rebuttal, argues that the risk that a mutual insured would be sued and require a defense is an identical risk under both policies, and *Sloan* applies.

Assurance attempts to distinguish the instant matter from *Sloan* because it believes that Assurance and Penn-America do not insure an "identical risk" as did the carriers in *Sloan*.  However, the South Carolina Supreme Court's decision in *Crossmann Communities of North Carolina, Inc. v. Harleysville Mut. Ins. Co.*, 395 S.C. 40, 717 S.E.2d 589 (2011), does not stand for the proposition that carriers covering progressive damage insure different risks.  Rather, *Crossmann* merely allocates progressive damages from the same risk across multiple policy years.  In its

holding, the Supreme Court stated that, "[w]e reverse the finding of joint and several liability and find the scope of Harleysville's liability is limited to damages accrued during its 'time on **the** risk.'" *Crossmann*, 395 S.C. at 45. (emphasis added).  Here, like *Sloan*, Assurance and Penn-America insure the identical risk relative to the Insured and the Sanger Action.  *Crossmann* merely allocates damages for that risk across triggered policies.  As such, Assurance, like Liberty in *Sloan*, is doing nothing more than it is obligated to do by providing a defense to the Insured.

Moreover, Assurance's concern over what *Sloan* may encourage a carrier to do, or not do, is misplaced.  Assurance contends that the current rule in *Sloan* "encourages an insurer to deny its insured a defense and, essentially, (1) play the odds that another insurer will step up and defend the insured, or (2) when another carrier is defending, disclaim its own independent defense duty and shift the cost of its defense duty to the defending carrier." (Dkt. 30, p. 2.).  Missing from this analysis is the fact that Penn-America could acknowledge a duty to defend the Insured and choose to hire defense counsel from its panel counsel list that may deviate from Assurance's panel counsel. Stated differently, Penn-America could choose to hire its own defense counsel for the Insured (which, incidentally, it has in this case) thereby providing no savings to Assurance by joining in the defense of the Insured.  Nothing in the law requires Penn-America to jointly retain counsel selected by Assurance to defend the Insured.

### *Motion to Certify*

Rule 244, SCACR, provides for certification of questions of law by federal courts.  The rule provides that the South Carolina Supreme Court may, in its discretion, answer questions of South Carolina law "which may be determinative of the cause then pending in the certifying court when it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court."

> Federal courts in diversity cases apply the law of the forum state. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Where there is no case law from the forum state which is directly on point, the district court attempts to do as the state court would do if confronted with the same fact pattern. . . Only if the available state law is clearly insufficient should the court certify the issue to the state court . . .

*Roe v. Doe*, 28 F.3d 404 (4th Cir. 1994).

The Court cannot say that there is no controlling precedent in South Carolina, given the Court's construction of the ruling in *Sloan*. Therefore, certification is not necessary.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Penn-America's Motion for Summary Judgment (Dkt. 19) and **DENIES** Assurance's Motion to Certify Questions to the South Carolina Supreme Court (Dkt. 30).

|  |  |
|---|---|
| | s/R. Bryan Harwell |
| March 27, 2013 | R. Bryan Harwell |
| Florence, South Carolina | United States District Judge |